**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT MARC LEEDS, | Case No. 3:15-cv-00261-LRH-CLB |
| Petitioner, | |
| v. | **ORDER** |
| PERRY RUSSELL[1], et al., | |
| Respondents. | |

Petitioner Robert Marc Leeds, a Nevada prisoner, filed a Third Amended Petition for Writ of Habeas Corpus (ECF No. 35) ("Petition") under 28 U.S.C. § 2254. This matter is before the Court for adjudication on the merits of the remaining grounds in the Petition. For the reasons discussed below, the Court grants a conditional writ of habeas corpus on Ground Two of the Petition, subject to the state's ability to retry Petitioner within the time period established by this order. The Court does not reach the remaining grounds of the Petition.

**I.   Background**

Petitioner challenges his 2006 Nevada state judgment of conviction, pursuant to a jury verdict, of one count of first-degree murder with use of a deadly weapon, one count of attempt murder with use of a deadly weapon, one count of battery with use of a deadly weapon resulting in substantial bodily harm, and one count of burglary while in possession of a deadly weapon. (Ex. 72; ECF No. 19-72.) The battery with use of a deadly weapon count was dismissed as a lesser included offense. (Ex. 71 at 4-5; ECF No. 19-6.)

---

[1] It appears from the state corrections department's inmate locator page that Petitioner is incarcerated at the Northern Nevada Correctional Center ("NNCC"). *See* https://ofdsearch.doc.nv.gov/form.php (retrieved September 2021 under identification number 94212). The department's website reflects that Perry Russell is the warden of that facility. *See* https://doc.nv.gov/Facilities/NNCC_Facility/ (retrieved September 2021). At the end of this order, the Court directs the Clerk of the Court to substitute Petitioner's current immediate physical custodian, Perry Russell, as Respondent for the prior Respondent Isidro Baca, pursuant to, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

1

Petitioner had a history of depression with a provisional diagnosis that his history of depression was in the context of bipolar affective disorder. (Ex. 64; ECF No. 18-1 at 175.) Because Petitioner did not have medical insurance, he did not meet regularly with a psychiatrist. (*Id.* at 192.) Petitioner, however, was treated by primary care physicians and was prescribed a drug, Effexor. (*Id.* at 136.)

Petitioner was married to an individual named Sally Lane ("Lane") from 1985 to approximately 2005. (Ex. 62; ECF No. 17-2 at 189, 194.) Lane testified at trial that during their marriage, she and Petitioner gradually no longer had a romantic relationship and stayed in separate bedrooms. (*Id.* at 199-200.) Petitioner and Lane began divorce proceedings. (*Id.* at 193.) Lane testified that she received money from her family and in exchange she agreed to divorce Petitioner. (*Id.* at 195-96.)

Following the finalization of their divorce, Petitioner and Lane relocated from Canada to Las Vegas, Nevada and continued to live together in a home in Henderson, Nevada. (*Id.* at 202-03.) Lane was the only individual listed on the rental lease agreement. (*Id.* at 203.) Lane testified that she communicated to Petitioner on approximately three occasions that he should move out of the house. (*Id.* at 216). Lane, a veterinarian, began working at an animal shelter in September 2005. (*Id.* at 204.) Lane met her co-worker, William Scarborough ("Scarborough"), who handled euthanizing animals at the animal shelter. (*Id.* at 217.) Thirty years prior, Scarborough had been in prison for an attempted armed robbery conviction and was previously a heroin addict. (*Id.* at 220). Petitioner was aware of Scarborough's background through conversations with Lane. (*Id.* at 223). Petitioner testified that he was concerned that his wife was in danger working with Scarborough. (Ex. 65; ECF No. 19 at 43.)

Lane began a romantic relationship with Scarborough and he became her boyfriend. (Ex. 62; ECF No. 17-3 at 32). She communicated to Scarborough that Petitioner had "psychological problems" and that she had told Petitioner that he needed to move out. (*Id.* at 32-33.) In November 2005, Lane told Petitioner that he had to vacate the house and move his possessions out of the house during Thanksgiving weekend because her family would be visiting. (*Id.* at 18.) Lane did not communicate to Petitioner that she began a relationship with Scarborough. (*Id.*) Lane's family

did not approve of her relationship with Petitioner. (Ex. 63; ECF No. 18 at 68.) Lane's family was not aware that Petitioner was still in her life. (*Id.*) Petitioner left the house and stayed in his office. (Ex. 62; ECF No. 17-3 at 31.) Petitioner testified that around this time, he did not have any more Effexor, his prescribed medication. (Ex. 65; ECF No. 19 at 86.)

Around 2 A.M. on the Saturday of Thanksgiving weekend, Lane returned to the house with Scarborough and Petitioner was already in the house. (Ex. 62; ECF No. 17-3 at 22, 27-28.) Petitioner testified that while he was in the house, he saw a new futon was moved in and believed he was "walking in on a love nest in my own house." (Ex. 65; ECF No. 19 at 63.)

Both Petitioner and Lane called the police. (Ex. 63; ECF No. 18 at 76.) Lane informed the police that Petitioner did not live there. (*Id.* at 76.) When Lane attempted to open the door from the garage, it was blocked by Petitioner and Petitioner pulled Lane into the house. (*Id.* at 72.) Petitioner was "hysterical" and crying. (*Id.* at 78.) Lane told Petitioner that he needed to leave and encouraged him to go to Florida to be with his family. (*Id.* at 94).

Police officers arrived at the scene and separated Petitioner, Lane, and Scarborough. (Ex. 64; ECF No. 18-1 at 12.) Officer Graham testified that Petitioner was crying, yelling, screaming, was visibly upset, and not following instructions. (*Id.* at 13.) Officer Graham further testified that Petitioner informed him that he had been living in the house for a couple of months but stayed the night in his office the previous night because Lane's mother was coming to town. (*Id.* at 15.) Lane informed Officer Graham that they were legally divorced. (*Id.* at 16.) The officers determined that Petitioner could not be forced to leave without an eviction proceeding because he had a right to be at the residence (*Id.* at 20-21.) An officer offered to drive and Petitioner accepted a ride to Petitioner's office to resolve the situation. (*Id.* at 18.) Petitioner testified that he returned to his office and while he was in his office, he called the house numerous times. (Ex. 65; ECF No. 19 at 89.) Scarborough answered and Scarborough told Petitioner that Petitioner did not live at the house anymore. (*Id.*)

The following afternoon, Petitioner pawned his laptop computer to receive money to "impress [Lane.]" (Ex. 65; ECF No. 19 at 90.) Petitioner took a bus to the house. (*Id.*) Petitioner returned to the house while Lane and Scarborough were there. (*Id.* at 142.) Lane testified that

Petitioner was apologetic, and he appeared to be trembling. (Ex. 63; ECF No. 18 at 104.) Petitioner goes to the front door, Petitioner knocks on the garage door, and Petitioner goes to the back door. (Ex. 62; ECF No. 17-3 at 48-49.)

Standing outside, Petitioner held cash in his hand, showed it to Lane, and told her he has money for rent. (Ex. 65; ECF No. 19 at 90.) Scarborough told Petitioner that he did not live there anymore. (*Id.*) Lane told Petitioner to leave. (*Id.*) Petitioner asked Lane to come outside to speak. (Ex. 65; ECF No. 19 at 93.) Scarborough and Lane go outside. (*Id.* at 94.) Scarborough suggests that Lane should not take the cash, but Lane accepts the money from Petitioner. (*Id.* at 94-95.) There is a discussion that Petitioner should go to Florida where his family resides. (ECF No. 18 at 107.) Scarborough offered to drive Petitioner to the airport. (*Id.* at 107.) Scarborough and Petitioner entered Scarborough's truck with Petitioner sitting on the passenger side. (*Id.* at 107.) While still in the truck, Petitioner asked to use Lane's cellphone and asked Lane to confirm a telephone number. (*Id.* at 109.) Petitioner then asked for a drink of water. (*Id.* at 109.)

Scarborough turned off the truck, exited the truck in frustration, and stated "[Petitioner's] not going." (ECF No. 18 at 111.) Scarborough walks toward a back gate and then back up to the driveway and Lane follows him. (*Id.*) Petitioner gets out of the truck and is standing near the driver's side. (*Id.* at 113.) Petitioner has a cell phone in his left hand and it appears that he is talking on the phone. (*Id.* at 114.)

While Scarborough stood outside with his back turned away from the Petitioner, Petitioner dropped the cell phone, rushed towards Scarborough, tackled him, and they both fell to the ground into the garage. (Ex. 63; ECF No. 18 at 115-17.) Petitioner testified that he perceived that Scarborough was making "a b-line for [Lane.]" (Ex. 65; ECF No. 19 at 108.) Petitioner and Scarborough struggled. Petitioner repeatedly struck Scarborough while Lane hit Petitioner on his back telling him to stop. (Ex. 62; ECF No. 17-3 at 70.) Lane testified that she saw blood on Scarborough's face and a knife in Petitioner's hand. (*Id.*) Petitioner testified that he saw Scarborough reach for a knife while they were struggling on the ground and Petitioner grabbed the knife. (Ex. 65; ECF No. 19 at 109.) Lane received injuries to two of her fingers during the altercation. (Ex. 62; ECF No. 17-3 at 81-82.)

      Petitioner stabbed Scarborough approximately thirty-one times. Petitioner completed the final stab to Scarborough in his chest and Scarborough fell over on to his side. (*Id.* at 71-72, 80.) Petitioner stated, "die like the animals you kill." (*Id.* at 76-78.) Petitioner then went to the truck and picked up an item that appeared to be a tire iron. (*Id.* at 86.) Petitioner walked back to Scarborough and hit Scarborough on the head with the tire iron. (*Id.* at 86-87.) At trial, the jury was provided with instructions for first-degree murder related to the felony murder rule in addition to instructions for first-degree murder that is perpetrated by means of any kind of willful, deliberate, premeditated killing. (Ex. 70; ECF No. 19-5 at 10, 28.) The State argued that Petitioner could be found guilty of first-degree felony murder because he committed burglary as the predicate felony. (Ex. 66 at 72-73; ECF No. 19-1.)

      Following the jury's guilty verdict, the state district court sentenced Petitioner to life with the possibility of parole after serving a minimum term of twenty years and a consecutive term of twenty years to life for the use of a deadly weapon for the first-degree murder count. (Ex. 72; ECF No. 19-7.) Petitioner was also sentenced to a term of six to twenty years as well as a consecutive term of six to twenty years for the use of a deadly weapon for the attempt murder count. (*Id.*) In addition, Petitioner was sentenced to a concurrent term of four to thirteen years for the burglary count. (*Id.*)

      Petitioner appealed and the Nevada Supreme Court affirmed the judgment of conviction. (Ex. 87; ECF No. 21-4.) Petitioner then filed a state habeas petition. (Ex. 100; ECF Nos. 21-17, 22.) The state district court denied his state habeas petition. (Ex. 116; ECF No. 22-5.) The Nevada Supreme Court affirmed the denial of the state habeas petition. (Ex. 123; ECF No. 23-2.) Petitioner filed a federal first amended habeas petition, second amended petition, and third amended petition. (ECF Nos. 3, 12, 35.) The respondents moved to dismiss and the Court granted, in part, and denied, in part. The Court deferred consideration of whether Petitioner established cause and prejudice pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), as to Claims Two, Six, Fourteen, and Fifteen until the merits of these grounds were briefed by the parties. (ECF No. 62.) The respondents answered the remaining claims in the petition and Petitioner replied. (ECF Nos. 76, 82.)

///

## II. Legal Standards

### a. Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75.

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### b. Standard for Evaluating an Ineffective Assistance of Counsel Claim

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective-

6

assistance-of-counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts considering an ineffective-assistance-of-counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id*. at 687.

Where a state court previously adjudicated the ineffective-assistance-of-counsel claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

**III.   Discussion**

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. In *Martinez*, the Supreme Court held that the absence or inadequate assistance of counsel in an initial review collateral proceeding may be relied upon to establish cause excusing the procedural default of a claim of ineffective assistance of trial counsel. 566 U.S. at 9. The Nevada Supreme Court does not recognize *Martinez* cause as cause to overcome a state procedural bar under Nevada state law. *Brown v. McDaniel*, 130 Nev. 565, 331 P.3d 867, 875 (Nev. 2014). Thus, a Nevada habeas petitioner who relies upon *Martinez* – and only *Martinez* – as

a basis for overcoming a state procedural bar on an unexhausted claim can successfully argue that the state courts would hold the claim procedurally barred but that he nonetheless has a potentially viable cause and prejudice argument under federal law that would not be recognized by the state courts when applying the state procedural bars. "[A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding." *Martinez*, 566 U.S. at 17.

To establish cause and prejudice to excuse the procedural default of a trial-level ineffective assistance of counsel claim under *Martinez*, a petitioner must show that: (1) post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent deficient performance, the result of the post-conviction proceeding would have been different; and (3) the underlying ineffective assistance of trial counsel claim is a substantial one. *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019).

To show that a claim is "substantial" under *Martinez*, a petitioner must demonstrate that the underlying ineffectiveness claim has "some merit." *Martinez*, 566 U.S. at 14. That is, the petitioner must be able to make at least some showing that trial counsel performed deficiently, and that the deficient performance harmed the defense. *See Strickland*, 466 U.S. at 695-96. When evaluating counsel's choices, the Court must make "every effort … to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "[C]ounsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Pinholster*, 563 U.S. at 189. Here, Petitioner advances only *Martinez* as a basis for excusing default for Ground Two, which is an ineffective assistance of counsel ("IAC") claim.

### a. Ground Two

In Ground Two, Petitioner alleges that trial counsel rendered ineffective assistance for failing to challenge the burglary charge and felony murder rule on the basis that Petitioner could not burglarize his own home. (ECF No. 35 at 31.) Relying on a Nevada Supreme Court case, *State*

*v. White*, 330 P. 3d 482, 484-86 (Nev. 2014), Petitioner contends that he was prejudiced because he was convicted of burglarizing a residence that he had an absolute right to enter. (ECF No. 82 at 21-22.) In *White*, the Nevada Supreme Court held that "[a] person cannot commit burglary of a home when he or she has an absolute right to enter the home," and that "[t]his rule applie[s] not only to sole owners of homes, but also joint occupants, and thus the important fact was occupancy, rather than ownership."[2] *White*, 330 P.3d at 484-5.

Respondents assert that Petitioner failed to show that post-conviction counsel was ineffective because the statements of law in *White* were issued after post-conviction counsel filed Petitioner's state habeas petition. (ECF No. 76 at 6.) In addition, Respondents rely on *People v. Ulloa*, 180 Cal. App. 4th 601, 607 (Cal. App. 2009), where the California Court of Appeals found that the defendant "did not have an unconditional possessory interest in the apartment at the time of the incident because he had separated from his wife and moved out."

### 1. *Martinez* Analysis

Ordinarily, "to establish 'cause' under *Martinez*—the first part of establishing 'cause and prejudice' to excuse a procedural default— [the petitioner] must demonstrate that post-conviction counsel was ineffective under *Strickland*." *Ramirez*, 937 F.3d at 1241 (citing *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798. In turn, *Strickland* requires demonstrating "that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Ramirez*, 937 F.3d at 1241. Determining whether there was a reasonable probability that the result of the post-conviction proceedings would be different "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.*

To establish "prejudice" under *Martinez*'s second prong of the "cause and prejudice" analysis, Petitioner must demonstrate that his underlying ineffective assistance of trial counsel

---

[2] Burglary laws "are aimed at the danger caused by the unauthorized entry" into "any house, room, apartment…or other building." *White*, 330 P.3d at 485. Burglary statutes "protect against intruders into indoor areas, not persons committing crimes in their own homes." *Id.*

claim is "substantial." *Id.* The Supreme Court in *Martinez* defined substantial to be a "claim that has some merit." *Id.* The *Martinez* court incorporated the standard for issuing a certificate of appealability into its definition of substantiality. *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013). As such, a claim is substantial if "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* Under this standard, the Court undertakes a "general assessment" of the merits underlying ineffective assistance of trial counsel claim. *Martinez*, 566 U.S. at 14-16.

### a. Cause

The Court finds that post-conviction counsel performed deficiently. Because *White* articulated the substantive law on burglary as it has always been in Nevada, counsel could have challenged the burglary charge on the basis that Petitioner had an absolute right to enter the home. *See State v. White*, 330 P. 3d 482, 484 (Nev. 2014); *Colwell v. State*, 59 P.3d 463, 472 (2002) (recognizing that if the court's interpretation of a statute is dictated by existing precedent, or even by the statute's plain language, the decision is not new; it simply states the existing law.) Although Petitioner moved his possessions and vacated the house during the weekend, Lane testified that Petitioner was staying in his office temporarily because she did not want her family to know they were still living together. (Ex. 63; ECF Nos. 17-2 at 229, 17-3 at 233; ECF No. 18 at 69.) Additionally, the officers responding to the emergency call the day prior to Scarborough's death determined that Petitioner had been living at the house and had a right to be there. (Ex. 66; ECF No. 19-1 at 74). Unlike the defendant in *Ulloa*, Petitioner was not clearly estranged from Lane[3] and he did not move out of the house permanently. Accordingly, there was sufficient basis for post-conviction counsel to set forth an ineffective assistance of trial counsel claim based on trial counsel's failure to challenge the burglary charge.

The Court looks through to what happened at the trial stage to consider whether there is a reasonable probability that the result of the post-conviction proceedings would have been different

---

[3] Lane and Petitioner divorce was executed in February 2005. (Ex. 62; ECF No. 17-2 at 193) Lane and Petitioner, however, agreed to continue to live together in Henderson, Nevada. (*Id.* at 202-03)

10

absent the deficient performance. *See Clabourne*, 745 F.3d at 378. Trial counsel did not set forth the viable argument that Petitioner had a right to enter the house as an occupant and thereby could not commit burglary pursuant to *White*. As such, trial counsel did not challenge the alternative theory of felony murder underlying the State's case for first-degree murder. Trial counsel's failure to challenge the burglary charge, in light of all the circumstances, was deficient.

Trial counsel's deficient performance justifies relief only if there is a "reasonable probability" that the jury would have reached a different result if adequate representation had been afforded. *Strickland*, 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id*. Petitioner argues that the jury likely based its guilty verdict on first-degree murder using the felony murder theory. (ECF No. 82 at 30.) Petitioner further argues that State cannot show that the jury definitively rested its verdict on the willful, premeditated, and deliberate theory of first-degree murder because the state district court used a general verdict form. (*Id*. at 27.) The jury also returned a guilty verdict on the burglary charge showing that the jury may have applied the felony murder rule in finding Petitioner guilty of first-degree murder. (Ex. 72; ECF No. 19-7.)

Although the State also set forth arguments and evidence to support the willful, premeditated, and deliberate theory of first-degree murder, the jury was instructed on both theories. (Ex. 66; ECF No. 19-1 at 76.) During closing argument, the State informed the jury that they could rely on any of the two theories to reach a first-degree murder guilty verdict. (*Id*.) As discussed below, the underlying ineffective assistance of counsel claim is strong enough to support a conclusion that, had post-conviction counsel performed effectively, there is a reasonable probability of a different outcome.

### b. Prejudice

The Court finds that the underlying claim of ineffective assistance of counsel is substantial under this standard. Having performed a general assessment of the claim, the Court "cannot conclude that Petitioner's ineffective assistance of trial counsel claim overall 'is insubstantial, i.e., it does not have any merit or [ ] it is wholly without factual support.'" *Ramirez*, 937 F.3d at 1247. Trial counsel's failure to object to the burglary charge and use of the felony murder theory as an

alternative theory for first-degree murder "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 694. There was a sufficient basis showing that Petitioner was a joint occupant of the home to argue that he could not burglarize his own home under *White*.

Further, Petitioner sets forth a substantial claim demonstrating that if trial counsel challenged the burglary charge the jury's decision would have reasonably likely been different absent the error. At trial, the State stated in closing arguments as follows:

> You don't have to agree on the theory. Remember, there's two theories that'll get you to first degree murder in this case. You can have premeditated, willful, and deliberate, or you can have the felony murder rule.
>
> . . .
>
> Why is that important? Because if you go back and deliberate and six of you believe hey, the Defendant premeditated what he did. He was deliberate in his actions and had the will to kill, then that's first degree murder. If the other six of you don't believe that but believe that this crime happened during that burglary, during that entry to the garage and it's the felony murder rule, then under the law, it's still first degree murder. Even though the theories that get you to the same result is different, the result is the same.

(Ex. 66; ECF No. 19-1 at 76-77.)

The state presented evidence to support both theories of willful, premeditated, and deliberate murder and felony murder to allow the jury to reach a guilty verdict on first-degree murder. In support of the willful, premeditated, and deliberate murder theory, the State presented evidence that police officers drove Petitioner to his office after he first confronted his ex-wife with her boyfriend and that Petitioner returned to the house twelve hours later after pawning his computer and catching a bus. Petitioner appeared to be apologetic and calm when he returned to the house. Petitioner initiated the physical contact with the victim. In addition, the State presented evidence that Petitioner stated, "die like the animals you kill" to the victim. (Ex. 66; ECF No. 19-1 at 60-79.)

At trial, the defense argued that the state failed to meet its burden in showing willful, premeditated, and deliberate murder and presented argument and evidence that Petitioner acted in self-defense. (*Id*. at 108-112.) The defense further argued that Petitioner did not have the requisite intent to commit a crime to support a guilty verdict for burglary. (*Id.*) The jury, however, found Petitioner guilty of first-degree murder as well as burglary. (Ex. 72; ECF No. 19-7.) Accordingly,

the Court finds that post-conviction counsel's failure to raise a substantial claim of ineffective assistance based on trial counsel's failure to challenge the burglary charge constitutes cause and prejudice to excuse the default in federal habeas.

### 2. Merits Analysis

Analysis here requires a "two-step process: first decide whether procedural default is excused, and if so, then address the claim squarely, after allowing a chance for any necessary record or evidentiary development. *Ramirez*, 937 F.3d at 1242, n. 7. Because the Court finds that procedural default is excused, the Court now addresses the merits of Ground Two. The Court applies a *de novo* standard of review because any federally reviewable claim that was not adjudicated on the merits in state court is reviewed *de novo*. *Apelt v. Ryan*, 878 F.3d 800, 825 (9th Cir. 2017); *See also Cone v. Bell*, 556 U.S. 449, 472 (2009).

To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Id.* at 13. The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct. *See Maryland v. Kulbicki*, 136 S. Ct. 2, 4 (2015).

Here, trial counsel did not challenge the burglary charge and felony murder theory of first-degree murder on the basis that Petitioner had a right to enter the home. Although the Nevada Supreme Court issued its decision in *White* in 2014 after Petitioner's trial, *White* did not change the law or then-existing precedent, it merely articulated the substantive law on burglary as it has always been in Nevada. *See White*, 130 Nev. at 537; *see also Weber v. State*, 132 Nev. 1043 (2016). As such, the argument that Petitioner had an absolute right to enter the home and thereby could not commit burglary was available at the time of his trial. As discussed above, the trial record indicates that Petitioner had a right to enter the home as a joint occupant. Accordingly, the Court finds that trial counsel's failure to challenge the burglary charge "fell below an objective standard of reasonableness."

For prejudice, the standard is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* The test for prejudice is not outcome-determinative, *i.e.*, defendant need not show that the deficient conduct more likely than not altered the outcome of the case; however, a simple showing that the defense was impaired is also not sufficient. *Id.* at 693.

The Court rejects Petitioner's contention that the Court must conduct harmless-error review under *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). (ECF No. 82 at 27.) "The *Strickland* prejudice analysis is complete in itself; there is no place for an additional harmless-error review." *Jackson v. Calderon,* 211 F.3d 1148, 1154 n. 2 (9th Cir.2000), *cert. denied.,* 531 U.S. 1072 (2001). *See also Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

Here, the prosecution presented two alternate theories of first-degree murder to the jury—felony murder in the perpetration of a burglary and murder perpetrated by willful, deliberate, and premeditated killing. (Ex. 66; ECF No. 19-1 at 76.) In support of the willful, deliberate, and premeditated theory, the prosecution presented evidence that Petitioner returned to the house twelve hours after police officers drove Petitioner to his office after he first encountered Lane and Scarborough. (*Id.* at 60.) Petitioner pawned his computer[4] and waited for a bus in the interim (*Id.*) Petitioner appeared to be apologetic and calm when he returned to the house. (*Id.* at 77.) Petitioner initiated the physical contact with the victim. (*Id.*) In addition, the State presented evidence that Petitioner stated, "die like the animals you kill" to the victim. (*Id.* at 79.) After stabbing Scarborough thirty-one times, Petitioner walked to Scarborough's truck to pick up a steel iron and bashed Scarborough in the head eight more times. (*Id.* at 78.)

At closing, the prosecution explained the felony murder rule as "a kind of murder which carries with it conclusive evidence of willfulness, premeditation, deliberation." (*Id.* at 72.) The prosecution further stated that "there's two theories that'll get you to first degree murder in this case. You can have premeditated, willful, and deliberate, or you can have the felony murder rule."

---

[4] Lane testified that Petitioner's laptop was important to Petitioner and described it as his "second nervous system." (Ex. 62 at 38; ECF No. 17-3.)

The prosecution as well as jury instruction no. 20 explained to the jury that they could still find Petitioner guilty of first-degree murder if they unanimously agreed on the charge, even if they did not unanimously agree on the theory. (Ex. 66; ECF No. 19-1 at 76-77; Ex. 70 at 22; ECF No. 19-5.)

The defense argued that this was "a case about manslaughter," that Petitioner realized his marriage was over, that he was provoked by his interaction with Scarborough outside of the garage, and that he snapped when he perceived Scarborough make a move toward Lane. (Ex. 66; ECF No. 19-1 at 116-118.) The defense further argued that there was a struggle and in Petitioner's mind "he's fighting for his life." (*Id.* at 109.) The defense elicited testimony from Petitioner that Scarborough had the knife and highlighted that Scarborough was alarmed and had checked around the house for Petitioner. (*Id.* at 118.) The defense further argued that Petitioner did not enter the garage with the intent to commit a crime, but to protect Lane. (*Id.* at 113.) The defense set forth argument and presented testimony that Petitioner was acting in a heat of passion and in self-defense to negate the prosecution's arguments that this was a deliberate, willful, and premeditated murder.

The Court finds that if trial counsel challenged the burglary charge as a predicate to the felony murder rule, there is a reasonable probability that the result of the proceeding would be different. Although the prosecution argued and presented evidence in support of both theories of first-degree murder, there is a reasonable probability that any number of the jurors found Petitioner guilty of first-degree murder under the felony murder in perpetration of a burglary theory and did not find deliberation, premeditation, and willfulness. Because the jury was required to reach a unanimous verdict on each count, the outcome could have differed if only "one juror would have struck a different balance." *Wiggins*, 539 U.S. 510, 537 (2003). The jury was instructed on both theories of willful, premeditated, and deliberate murder and felony murder and returned a general verdict of first-degree murder. Moreover, the jury found Petitioner guilty of the burglary charge.

If trial counsel challenged the burglary charge, there is a reasonable probability that the jury would have reached a different verdict. The Court recognizes that the prosecution presented evidence supporting a guilty verdict for willful, premeditated, and deliberate murder. Under the standard that the Court must apply, however, the Court would be "improperly invad[ing] the

15

province of the jury," if the Court determined that no reasonable juror would have believed that Petitioner acted in the heat of passion when he killed Scarborough or that the prosecution otherwise did not meet its burden in proving willfulness, premeditation, and deliberation beyond a reasonable doubt. *Pirtle v. Morgan*, 313 F.3d 1160, 1174 (9th Cir. 2002). There is a reasonable probability that the jury would not have unanimously returned a guilty verdict of first-degree murder under the willful, premeditated, and deliberate theory. If even a single juror concluded that Petitioner was guilty of first-degree murder under the felony murder in perpetration of a burglary theory without finding that the prosecution proved willfulness, premeditation, and deliberation and had trial counsel challenged the burglary charge on the basis that Petitioner could not burgle a home he had the right to enter, the result of the proceedings would be different.

Considering all of the circumstances of this case, the Court concludes that, had trial counsel challenged the burglary charge and felony murder theory of first-degree murder on the basis that Petitioner had a right to enter the home, the probability of a different result is "sufficient to undermine the confidence in the outcome." *Strickland*, 466 U.S. at 694. Petitioner accordingly is entitled to relief on Ground Two. The Court will grant a conditional writ of habeas corpus under the terms and conditions set forth below, subject to the state's ability to retry Petitioner on the pertinent charges within the timeframe established therein.

### IV.     Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. Based on its holding on Ground Two, the Court is granting a conditional writ of habeas corpus subject to a possible retrial. The Court does not reach the remaining claims as Petitioner would not be entitled to greater relief on any of his remaining claims than the relief afforded herein. The remaining claims therefore will be denied without prejudice as moot.

IT IS THEREFORE ORDERED that Petitioner Robert Marc Leeds' Third Amended Petition for Writ of Habeas Corpus (ECF No. 35) is granted in part and denied in part, with the Court granting the relief specified below on Ground Two.

IT IS FURTHER ORDERED that a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is

conditionally granted as to Ground Two and, accordingly, the judgment of conviction of Petitioner Leeds for first-degree murder with use of a deadly weapon (Count One) and burglary while in possession of a deadly weapon (Count Four) in Case No. 06C218608 in the Eighth Judicial District Court for the State of Nevada is hereby VACATED IN PART, and Petitioner Leeds will be released from any and all custody, restraint, and/or continuing consequences from the conviction on said Count One and Count Four within 60 days of the later of the conclusion of any proceedings seeking appellate or *certiorari* review of the Court's judgment, if affirmed, or the expiration of the delays for seeking such appeal or review, unless the State through the respondents files a written election in this matter within the 60 day period to retry Petitioner Leeds and thereafter commences jury selection in the retrial within 120 days following the election to retry Petitioner Leeds, subject to reasonable request for modification of time periods in the judgment by either party pursuant to Rules 59 and 60.

IT IS FURTHER ORDERED the Clerk of the Court is directed to enter judgment accordingly conditionally granting the Third Amended Petition for Writ of Habeas Corpus (ECF No. 35) in part as provided in the two proceeding paragraphs. It is the Court's intention that the judgment entered pursuant to this order will be a final judgment. Final judgment is entered subject to a possible later motion to reopen the matter to enter an unconditional writ if then warranted, as a matter of enforcement of the judgment.

IT IS FURTHER ORDERED that the Clerk of the Court substitute Perry Russell for Respondent Isidro Baca.

IT IS FURTHER ORDERED that the Clerk of Court is directed to send a copy of this order and judgment to the Clerk of the Eighth Judicial District Court, in connection with the court's case no. 06C218608.

DATED this 30th day of September 2021.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE